# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| ANTHONY QUAIL | : | No. 18-315-6 |

## MEMORANDUM

PRATTER, J.                                                                                                                                             AUGUST 15, 2022

Anthony Quail seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), claiming that certain medical conditions place him at a greater risk of contracting a severe COVID-19 infection. But besides failing to properly exhaust his administrative remedies, Mr. Quail's asserted medical conditions do not constitute an "extraordinary and compelling" reason to grant compassionate release. Therefore, the Court denies his motion.

### BACKGROUND

### I. Mr. Quail's Motion for Compassionate Release

Mr. Quail was indicted for his involvement with the Hilltop Drug Gang, which sold large amounts of narcotic drugs, especially heroin, which was sometimes laced with fentanyl. The gang stored drugs in various cars and residences throughout West Philadelphia, and members of the gang, including Mr. Quail, were known to carry firearms to protect the organization and the narcotics. After an investigation including controlled buys and wiretaps, Mr. Quail was charged in a superseding indictment with conspiracy to distribute one kilogram or more of a mixture and substance containing a detectable amount of heroin in violation of 21 U.S.C. §§ 846 and 841(a)(1). The United States Marshals Service eventually apprehended Mr. Quail on September 27, 2018, after he was formally declared a fugitive and following a short foot pursuit on the day of the arrest. He pled guilty to the single count of conspiracy on July 15, 2021.

Based on this charge and Mr. Quail's other prior criminal history, the Court sentenced him to 60 months of imprisonment, five years of supervised release, a $500 fine, and a $100 special assessment. Mr. Quail is currently serving his sentence at the Federal Correctional Institute at Allenwood Medium ("FCI Allenwood Medium"), with an anticipated release date of June 3, 2024.

Mr. Quail filed a motion for compassionate release explaining that he suffers from a variety of medical conditions that, he asserts, place him at a higher risk of developing a severe infection from COVID-19. The Government opposes Mr. Quail's motion. The motion is ripe for the Court's resolution.

## II. The Bureau of Prisons' Response to the COVID-19 Pandemic

The Bureau of Prisons ("BOP") has taken many measures to "mitigate the spread of COVID-19 in [its] facilities" and protect the health of inmates. *BOP Modified Operations*, Bureau of Prisons (Nov. 25, 2020), https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Aug. 9, 2022). The BOP limits outside visitors, limits inmate movement within the prison, requires inmates and staff to wear masks, and screens all staff daily for symptoms. If an incoming inmate tests positive or presents symptoms, the BOP immediately medically isolates that inmate, while incoming inmates who are asymptomatic and negative are placed in quarantine for at least 14 days. The BOP has also put thousands of eligible prisoners—the elderly, the terminally ill, and those who have almost finished their sentences—in home confinement. 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g); CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516.

The BOP has offered vaccines to its staff members and inmates, including those at FCI Allenwood Medium. *COVID-19 Vaccine Implementation*, Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited Aug. 9, 2022). Mr. Quail is presently imprisoned at FCI Allenwood Medium, which houses 1,264 total inmates. *FCI Allenwood Medium*, Bureau of Prisons, https://www.bop.gov/locations/institutions/alm/ (last visited Aug. 9,

2

2022). As of August 2022, there had been 495 inmates that had recovered and 54 staff members who had recovered from COVID-19, no inmates or staff had died of COVID-19, and there are presently 24 reported active inmate cases of COVID-19 at FCI Allenwood Medium. Tbl. *FCI Allenwood Medium*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Aug. 9, 2022).

## LEGAL STANDARD

For the most part, courts "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Before asking a court to modify a sentence, a prisoner must first have "fully exhausted" his administrative remedies within the prison before applying to a court. 18 U.S.C. § 3582(c)(1)(A). Assuming a prisoner has met that threshold requirement, a court can, in limited circumstances, reduce a sentence for "extraordinary and compelling reasons." § 3582(c)(1)(A)(i). To count as extraordinary, the reason must be "[b]eyond what is usual, customary, regular, or common." *Extraordinary* (def. 1), *Black's Law Dictionary* (11th ed. 2019). To be compelling, the reason must be "irresistible," such that the court is "oblige[d]" or "force[d]" to reduce the sentence. *Compelling* (def. b.), *Oxford English Dictionary* (2d ed. 1989); *Compel* (def. 1), *id.* Examples of potential "extraordinary and compelling" reasons include terminal medical conditions, complications arising from old age, or difficult family circumstances. U.S.S.G. § 1B1.13 app. n. 1.[1] Once the prisoner has shown an extraordinary and compelling reason to warrant a sentence reduction, the Court must then consider the sentencing factors, set out in 18 U.S.C. § 3553(a), to decide if the sentence *should* be reduced, and by how much. 18 U.S.C. § 3582(c)(1)(A).

---

[1] On its face, U.S.S.G. § 1B1.13 governs a "motion of the Director of the Bureau of Prisons" for compassionate release. Thus, this "policy statement is not binding on prisoner-initiated motions." *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021). Still, it is highly persuasive authority that "sheds light on the meaning of extraordinary and compelling reasons." *Id.*

3

## DISCUSSION

### I. Mr. Quail Has Not Properly Exhausted His Administrative Remedies

At the outset, Mr. Quail's motion must be denied for failure to comply with the exhaustion requirement. That is because the Third Circuit Court of Appeals has required "strict compliance" with the exhaustion requirement set forth in § 3582(c)(1)(A). *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Whether or not this rule is jurisdictional, as some courts have found, or a claim-processing rule, as others have found, it remains a threshold requirement of "critical[ ] importance."[2] *Id.*; *see United States v. Cruz*, 455 F. Supp. 3d 154, 157 (M.D. Pa. 2020) ("[S]ince [the defendant] has not yet presented his request for compassionate release to the BOP, it must be dismissed for lack of jurisdiction."); *United States v. Greenlove*, 469 F. Supp. 3d 341, 349 (M.D. Pa. 2020) ("[T]he court cannot waive Section 3582(c)(1)(A)'s exhaustion requirement because it is jurisdictional"). *But see, e.g., United States v. Texeira-Nieves*, 23 F.4th 48, 53 (1st Cir. 2022) (explaining the 30-day exhaustion requirement is a mandatory "non-jurisdictional claim-processing rule"); *United States v. Saladino*, 7 F.4th 120, 124 (2d Cir. 2021) (similar).

Here, Mr. Quail has failed to exhaust his administrative remedies, which "presents a glaring roadblock foreclosing compassionate release at this point." *Raia*, 954 F.3d at 597. Thus, the Court must deny his motion at the threshold. Nevertheless, in the hopes of providing Mr. Quail clarity moving forward, the Court will briefly consider and discuss the merits of his motion as well.

---

[2] In a recent unpublished opinion, however, the Court of Appeals for the Third Circuit appears to have backed away from this position, permitting a motion for compassionate release to be considered after the Government waived the exhaustion requirement. *See United States v. Canlas*, No. 22-1117, 2022 WL 2447108, at *1 n.1 (3d Cir. July 6, 2022) (per curiam). Still, unpublished opinions are not binding precedent, whereas published opinions are binding on this Court. *See, e.g., United States v. James*, 928 F.3d 247, 254 n.5 (3d Cir. 2019) (explaining that two unpublished opinions of the Third Circuit do not have "any precedential effect" (citations omitted)).

## II. Mr. Quail Has Not Presented Any Extraordinary and Compelling Reason for his Release

Mr. Quail explains that his charges are nonviolent and minor compared to other crimes. In addition, he explains that he suffers or has suffered from asthma, pneumonia, nerve damage, brain swelling, and severe headaches that cause loss of vision. But neither of these is an "extraordinary and compelling" reason for his release.

First, as to his claimed medical conditions, in order to demonstrate an "extraordinary and compelling" reason sufficient to qualify for compassionate release, a prisoner must show that he suffers from "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 app. n.1(A)(ii).

Mr. Quail, however, does not have any serious physical or medical condition that diminishes his ability to care for himself while in prison, even given the risk of a COVID-19 infection. It is true that moderate to severe asthma "may" make a person "more likely to get very sick from COVID-19." *People with Certain Medical Conditions*, Centers for Disease Control & Prevention (May 2, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Aug. 8, 2022). But Mr. Quail is not taking any medication for his asthma, and none of his other medical conditions are listed as placing him at higher risk. *See id.* Plus, he does not argue that he is unable to care for himself or any of these conditions while in prison. Therefore, quite clearly, he has not demonstrated that his medical conditions constitute an "extraordinary and compelling" reason for his release.

Moreover, the Government represents to the Court that Mr. Quail has refused the COVID-19 vaccine. But the COVID-19 vaccine Mr. Quail refused, the Janssen Covid-19 vaccine, has been documented to be highly effective in preventing hospitalization and death for those who

5

become sick. *See, e.g. Johnson & Johnson's Janssen COVID-19 Vaccine Overview and Safety*, Centers for Disease Control & Prevention (Aug. 3, 2022), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/janssen.html (last visited Aug. 9, 2022).

Plus, the widespread availability of COVID-19 vaccines virtually eliminates the risk of death or serious injury as a basis for compassionate release. *Garrett v. Murphy*, 17 F.4th 419, 433 (3d Cir. 2021). A prisoner simply cannot expect success with a "claim[ed] fear of risk of contracting the virus while refusing medical treatment that would drastically reduce his risk." *United States v. Garcia*, No. 14-cr-20035, 2021 WL 1499312, at *3 (C.D. Ill. Apr. 16, 2021); *see also United States v. Gonzalez Zambrano*, No. 18-cr-2002, 2021 WL 248592, at *5 (N.D. Iowa Jan. 25, 2021) ("Although defendant has a right to refuse medical treatment, the Court finds that it would be inappropriate to reward her refusal to protect herself by granting her release. It would be paradoxical to endorse a system whereby a defendant could manufacture extraordinary and compelling circumstances for compassionate release by unreasonably refusing the health care afforded to them."). "[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021). Thus, Mr. Quail's refusal to receive the vaccine is not an "extraordinary and compelling reason" to grant him early release. *Cf. United States v. Rivera*, No. 10-cr-632, 2022 WL 889048, at *3–4 (E.D. Pa. Mar. 25, 2022).

Turning to Mr. Quail's argument that his crimes were non-violent and minor relative to others, that is also not a reason to grant compassionate release. Mr. Quail was involved in a gang that distributed heroin in Philadelphia, leading to at least two overdose deaths. While Mr. Quail's specific involvement might not have been violent, he does not deny his contribution to a large-

scale drug distribution enterprise. Thus, even if the Court were to find that he had demonstrated an "extraordinary and compelling" reason for compassionate release, which he has not, the Court would still deny his motion based on the sentencing factors that the Court must consider. 18 U.S.C. §§ 3582(c)(1)(A), 3553(a). Mr. Quail's crime was serious, requires deterrence, both general and specific, and there is a need to protect the public from future such drug trafficking activity by Mr. Quail. 18 U.S.C. § 3553(a)(2). Plus, Mr. Quail has only served approximately 12 months of a 60-month sentence, another reason counseling against early release. *See United States v. Bullock*, 833 F. App'x 934, 935 (3d Cir. 2021) (per curiam) (granting motion for summary affirmance of denial of compassionate release after finding that district court did not abuse its discretion in considering the 3553(a) factors, including the inmate's substantial time remaining to be served).

In sum, Mr. Quail has failed to exhaust his administrative remedies, as is required to file a motion for compassionate release. But, even if he had properly exhausted his administrative remedies, the Court would still deny his motion because he has not demonstrated any "extraordinary and compelling" reason for his early release and, even if he had overcome that hurdle, the sentencing factors still counsel against his early release. Therefore, the Court denies Mr. Quail's motion.

## CONCLUSION

For the foregoing reasons, the Court denies Mr. Quail's motions for compassionate release. An appropriate order follows.

BY THE COURT:

*[signature]*

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

7